With that, we'll hear argument in the first case, which is United States v. Rourke. And I believe Mr. Newton is representing Mr. Rourke, right? Yes, thank you. Good morning. You may please the court. I would like to reserve two minutes for rebuttal. Keep your eye on the clock. We'll try to help you. I will. Thank you. Time permitting, this morning I would like to address three issues. First, whether the district court's mental health condition unconstitutionally delegates excessive discretion to a non-judicial officer, in this case a mental health treatment provider, in contravention of this court's decision in United States v. Nishida. Second, whether the district court's gang condition is void for vagueness under the due process clause. And then finally, I would like to address why it is appropriate for this court to remand to the district court to modify the 12-step treatment option within the substance abuse condition if this court remands for modification of either of the other two conditions that I've challenged. Counsel, as you know, the government takes a position that the mental health treatment delegation and the religious 12-step program are premature, because it really hasn't happened to Mr. Rourke yet. What's your response to that? I didn't see that argument about the mental health condition. I saw that about the 12-step program. It hasn't occurred yet, right? Well, he has been ordered to get mental health treatment. The weather, he's been ordered to go inpatient at this point. He's in a residential facility right now. Okay. Let's just say arguendo, it hadn't happened yet. What's your response to that? Does it matter that these are just possibly going to occur for purposes of what you're claiming? Well, as I've noted in the brief, in the reply brief, numerous decisions of this court have addressed conditions of supervision regardless of whether they have been activated or not. And let me tell you why that's actually the appropriate approach to take. There is the old Romero decision. I acknowledge that in the reply brief. But there are several subsequent Ninth Circuit-published decisions after Romero that take an opposite approach. And it makes sense that they do so. A condition of supervised release or probation is tantamount to a penal statute. And we allow people to challenge penal statutes when there's a serious risk that they'll, you know, that they have standing. Certainly, a person who is on supervised release who has a documented history of mental health and substance abuse problems would have standing to challenge a facially unconstitutional provision of the supervised release conditions. How much longer is he going to be on the supervised release? Good question. It ends on May 11th or May 10th of this year. Have any of these things happened yet? This is a separate question from the standing issue. Just to be practical, has he been required by the probation officer to attend a 12-step religious-based program? He has not. Has he been required by the probation officer to receive inpatient mental health treatment? He is inpatient for substance abuse, but how about for the mental health treatment? He has not. Has he been cited for violating the gang condition? He has not. And he's going to be released in four months. I want to make clear, I understand why the concerns existed and when this case started. It's been on, for modern day, a relatively fast track, but the reality is he served two-thirds of his supervised release period already and in less than four months, that's going to come to an end. That's correct, Your Honor, but I don't think any of that is a basis to avoid addressing constitutional, serious constitutional questions. What is the practical implication of this? Even if we would adopt your positions and remand for resentencing, is there any practical impact, given that by the time all of the process gets done, supervised release will have come to an end? Well, Your Honor, if it comes to an end, it's moot, but if it's not moot, this court has an obligation to address these constitutional issues. What do we do if we know practically that it will be moot? I mean, clearly the court has discretion to decide an appeal at the pace the court wishes to. I filed a motion to expedite this appeal at the outset with this in mind. I'm doing everything I can to have these substantial issues. And I should also say, we, of course, are not simply here for Mr. Rourke. We're here as part of our common law adjudication system to decide the law as it affects future people on supervised release. So you're going to be issuing a ruling that also serves to guide federal district judges, probation officers, and litigants and defendants in the District of Arizona and throughout the Ninth Circuit. So I would ask the court to... But you tell us we already have that ruling. Your argument's based on Nishida, basically. Well, I'm applying Nishida to a different set of facts, Your Honor. This is not on all fours. Very rarely do you have a case on all fours. Well, that would suggest that we need a published opinion for every single case because the facts don't always match, but that doesn't happen. In fact, we have a published opinion. You've cited it appropriately to urge the result you reach. But increasingly, this seems to me like a theoretical rather than real case because I can't see any actual impact it could have on your client. Well, it could, Your Honor. The probation officer could decide to exercise that discretion. And this court has said, and I've cited these decisions in my reply brief, you don't refuse to address an issue simply because the probation officer has discretion not to violate it. I cite two different... But see, we're past that now because we're two-thirds, more than two-thirds into his supervised release. He's already been assigned to a residential reentry center, so they're not pointing toward the 12-step program. There's no real indication that if the probation officer had raised the possibility and he said, no, I don't want to do that, that he would have been forced into doing that. I mean, I don't fault the appeal. But at this point, I don't see what real impact we could possibly have. So we may be wasting the time of everybody in this room hearing a case that can have no practical impact. Well, Your Honor... What's wrong with that? I think you cannot simply say we have four or five months left and he's going to run out the clock. That can't be a reason to avoid addressing substantial constitutional issues that have potential implications not just for him, even if remotely, but for other people as well. So you're guaranteeing it's theoretical rather than real almost, which leads to the standing question that Judge Smith was leading. If we don't have a practical impact, why are we taking this up? I'm not guaranteeing this is not going to happen by no means. I don't have a crystal ball. I'm not prescient. So I want to turn to some other issues, if that's okay. Can I just ask one other thing to follow up from what Judge Clipson said? He's cited Nishida. There are, as you know, because you cited them, virtually every circuit who has dealt with a religious-based 12-step program has found it to be a violation of the Establishment Clause. So if your client were actually compelled to do it, doesn't the case law, wouldn't that require us to find it unconstitutional? It would, but the fact that it is a recurring condition in the District of Arizona by itself is a good enough reason. If I could briefly turn to the gang condition. In my reply brief... You can't get close to your two minutes. It's up to you, but just be aware. In my reply brief, I note the Lanzetta decision of the Supreme Court from 1939. The Lanzetta decision provides that governing precedent concerning the undefined term gang. I also note the government repeatedly refers to the standard inpatient and standard outpatient mental health treatment conditions used in the District of Arizona. The word inpatient and outpatient do not appear at all regarding the mental health condition here. Can I go back to the gang condition? We have repeatedly upheld the concept of a criminal street gang. Correct. If the District Court amended the wording to include criminal, would that satisfy you? That would satisfy me. Okay. Thank you. Very well. I want to say this right. Verkateran, is that correct? Yes, Judge. Verkateran. Okay. May it please the Court. Keith Verkateran on behalf of the United States. First, I share a lot of the concerns that the Court raised with regard to the reality of these three conditions. I would like to say, though, that we believe that the District Court was correct in all three of these conditions. It was not objected to by the defendant at the District Court level and, therefore, were under the plain error standard. I certainly realize that this Court knows what that plain error standard states. Must be error. Must be plain. Must affect substantial rights and must seriously affect... Counsel, with respect, plain error doesn't really apply in at least the two circumstances we're talking about, does it? I'm putting aside the gang issue. Don't we have case law that says that, you know, substantial rights are interfered with and, therefore, it would not be a plain error standard? Judge, I believe that the plain error standard applies on all three of these conditions. And what cases would you cite for, say, for example, the religious 12-step program? What case would you say we would treat that as plain error? I believe under the Taylor case, the Taylor case forecloses his delegation issue. So that leaves him only with the establishment cause. Okay, well, I'm just asking about establishment. What case would you cite to us that says that if you have a condition that would require Mr. Rourke, in this case, to participate in a religious-based 12-step program, that whether he raises it or not, it affects his substantial rights and, therefore, you don't look at it under plain error review? Well, I believe that there's no case law out there that's going to tell you a 12-step program is only religious-based. But if it is, there's plenty of case law that says that's a violation of the establishment clause, right? If the defendant objects to it. So under the establishment clause, there's two factors that the defendant must take up. That the program is entirely religion-based and offers no secular alternatives and that the supervising court or probation officer required the defendant's participation after he objected to the religious-based nature of it. That's not the case here. And so how could any district court judge see that a 12-step program requirement within a supervised release condition be illegal, be so clearly outside the bounds of what this court has directed of the district court? So let me make sure I understand the government's position. You're saying that even though he could quickly find himself in such a program, he actually has to be in the program before he can object. Is that correct? I think at the point where a probation officer would direct an individual into a religious-based program and the person objects to it and the probation officer says, no, you must go or risk jail, I think that's when it becomes a right. But at that point, he's risking jail. That's a serious matter. Why couldn't he, based on a pretty well-known, well-established establishment clause violation, say, wait a minute, this is per se, this doesn't work? Well, it's one of the reasons why we have a plain error standard is because we want to encourage defendants at the district court level to object to these sorts of things. And he failed to do that, and therefore the probation officer wasn't allowed to put things on the record like, for instance, the fact that the District of Arizona Probation Department will never make anybody go into a religious-based program if they object to it based on the case law. And certainly that's our court's approach as well. The reality is that if an objection had been made to the district court, the language would have been changed. Not necessarily within the condition itself, Your Honor. I believe that certainly our district courts and our probation officers know the law. This leads me to a concern I have about the position that the government has taken. As I understand your argument, you're basically saying, well, it is true that the mental health treatment condition does not specify outpatient, but the silence on that subject should be read to mean just outpatient and that that's the standard practice in Arizona, the District of Arizona at this time. Is that the position? That's correct, post-Neshita, because it has to say inpatient. Stop, stop, because my law clerk has done a little research and he's identified at least four cases where orders issued by the District of Arizona specify outpatient. Within substance abuse or within mental health? Mental health. I'll read one of them. This is from a case called the United States v. Denson, entered last April. You must participate in a mental health assessment and participate in outpatient mental health treatment, and so on and so forth. So it doesn't seem to me to be the case that, oh, this is what everybody in Arizona understands the silence to mean. Now, I understand you're not going to be aware of every single order that gets entered by every single district judge, but it's hard for me to lean on an argument that says, oh, this is what it means when, in fact, other judges in Arizona are issuing orders that specify the word that's missing. And it gets me to the other concern I have, and this may relate to the potential standing argument. The process of appeal takes time. Here we are, and you've already heard my voice, my concern, that the clock has just about run out on us. And so the reason that I think our court allows defendants to object to conditions before they've suffered from the condition is that otherwise it's going to be too late. They will have suffered from whatever inappropriate direction is given by the probation officer before they can ever get this court to review it. So I don't think our history of decisions supports the proposition that they have to suffer from the application of the allegedly improper condition before they can complain about it. But then we come right back to the other problem, which is that there's not a real problem here, as best as anybody can tell, and it's highly unlikely that there will be. Any practical solution as to how we can address something like this? Well, I can certainly advise the court that there is a 0% chance that this defendant will be asked to go into inpatient because our courts and our probation department understand the Nishida decision. Whether they actually voice the word outpatient or not in their mental health condition. Maybe that should become the standard condition to avoid this. I'm not here to speak for every single judge within the district court, but I think that they believed at least during the original writing of the differences between inpatient and outpatient mental health condition after Nishida that the outpatient word was superfluous because if they don't say the word inpatient, it should be construed that Mr. Probation Officer or Mrs. Probation Officer, you are not allowed to put that particular defendant within an inpatient mental health facility. And therefore, there's a 0% chance that this defendant or any defendant that doesn't have the word inpatient into the mental health condition will ever risk doing inpatient mental health treatment. With respect, you're basically just saying trust us. Not entirely, Judge. This court, in other cases, have construed silent words. For instance, I believe it was a Daniels case that I cited with regard to the medication issue that it didn't particularly state certain medications. I remember Thomas Moore said silence denotes consent. So how do you deal with that? Well, not in this legal sense, Judge. There are other cases that construe silence to be we must review this as a constitutional way, in a constitutional way that the court meant it to be in a constitutional way, and therefore that saves the day on the mental health treatment. What do you suggest we do here under the circumstances? Judge, I do not believe there's a need for remand on this particular case for multiple reasons. First off, the defendant, these issues are not right. The defendant has not suffered any of these three conditions in any kind of violation. And it's not necessary because under the mental health I just explained, under the 12-step program, there is plenty of secular alternatives if the defendant were to voice any kind of objection on religious-based grounds for anything. And there's no court that's ever said that the 12-step programs are strictly religiously based in their nature. There could potentially be some 12-step programs that are and some 12-step programs that are not. And there are other programs that are listed in the condition that the defendant can go to for his treatment that are not religious-based. Then we hit exactly the practical problem we were just talking about. If we require a defendant to wait until he's suffered the ill consequences of a probation officer who you logically tell us won't do this but isn't by the terms of the conditions in this supervised release, isn't prohibited from doing it, suppose the probation officer says, you know, I've been a big believer in this Baptist Church 12-step program. It's got a lot of religion in it, but it's going to work for you, so that's where I'm sending you. What's he supposed to do? He can't get to us to get it fixed. I don't think that's what the district judge intended or empowered. But we've got a problem, at least theoretically. Is there any kind of practical solution? I'll take you past your time for a second because suppose we decide, okay, yeah, these conditions need to be fixed. Is there a way we can do that expeditiously? Can the district judge simply revise the conditions? What procedural problem are we facing here? I think procedurally, if this court were to render an opinion expeditiously and you remand it back to the district court to add any terms that this court were to see fit, certainly the district court could hold a hearing and change any of those conditions forthwith. I don't think it's necessary here, though. And I'd like to mention on the gang terms that there's been numerous cases where the court has held that because there's a knowingly mens rea within the condition and the gang terms, so for instance, in the Evans case or any other gang was not unconstitutionally vague. Criminal street gang and associate, not unconstitutionally vague. The Farley case, limiting the defendant's ability to associate with gang members. We've let you go over your time. I know my colleague asked you questions, and, of course, we can ask as many as we want. But let me ask my colleague whether either has additional questions. I think we're good. Thank you very much. So here's some rebuttal, please. Thank you. Obviously, it's a different Article III standing type matter, but in several cases the Supreme Court has held if something is capable of repetition yet evading review, that is a basis to consider. I do want to remind this court at the outset of this appeal, I tried to speed this up to avoid the problem we're in. Now, I'm certainly not blaming anybody. We understand that. But practically speaking, it appears the only thing that's going to satisfy your request is a published opinion, which usually takes a little while to get out. And as my colleague has well demonstrated, practically speaking, it won't help this defendant at all because the time would have run. So practically, what can we do? Can the government and your client enter into some kind of stipulation where it will be immediately taken care of and moot the whole thing out? Or your whole point is you're here because you want the published opinion. Well, I mean, as the officer of the court, sure, I would like to have good law made. But there are three things that could be done to satisfy my concerns. Add the word outpatient to the mental health condition. Add the word criminal street before the word gang. And after the 12-step condition program, either strike it or put in parentheses solely with the defendant's knowing, voluntary, and intelligent consent. May we say this then, Will, on behalf of the court? We encourage the two of you to talk. If you can arrange a stipulation to have the court do that, will you please let us know ASAP? Because it doesn't sound like there's any practical problem to doing that in this case. But there is a practical problem in our running through published opinion and getting it for any time to help Mr. Rourke. Certainly. The only reason I would like it to be published is it would give guidance to courts in the future. Understand. Thank you. Other questions by my colleagues? All right. Thanks to both counsel for your argument on this case. The case of United States v. Rourke is submitted.
judges: Siler, CLIFTON, SMITH